IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNETTE ANDERSON, | * | |
| | * | |
| *Plaintiff* | * | |
| | * | |
| v. | * | Civil Case No. JFM-09-2294 |
| | * | |
| NVR, INC., | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| | ***** | |

MEMORANDUM

Plaintiff Annette Anderson ("Anderson") brings this employment discrimination action against her former employer, NVR, Inc., ("NVR" or "Defendant") alleging age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] Now pending before me is Defendant's motion for summary judgment. For the following reasons, Defendant's motion for summary judgment is granted.

I.      FACTS

The following facts are uncontroverted or set forth in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Anderson was hired by Defendant NVR in 1988. (Compl. ¶ 6.) NVR is a company engaged in the business of homebuilding and home mortgage banking, and in 2005 it employed over 5,400 people nationwide. (Madigan Aff. ¶ 4.) In the five years since then, however, the collapse of the housing market has caused NVR's revenue to drop 49 percent. (*Id.* ¶ 5.) As a result, NVR has

---

[1] Anderson's Complaint also alleged sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Anderson voluntarily dismissed this claim with prejudice at the close of discovery. (Stipulation of Dismissal, Doc. 25, Mar. 22, 2010.)

been forced to repeatedly consolidate its operations and undertake a series of reductions in force ("RIF"). Since 2005, NVR has been forced to cut its workforce by 50 percent, and today the company employs only 2,700 workers nationwide. (*Id.*)

At the time of the events relevant to this case, Anderson was employed by NVR as a Sales Manager in NVR's Washington-Maryland Region ("WMD Region"). (*Id.* ¶ 6.) Prior to serving as a Sales Manager, Anderson had worked as a Sales Representative from 1988-2001 and as a Marketing Coordinator from 2001-03. (Anderson Personnel History, Pl.'s Ex. 5.) As a Sales Manager, Anderson initially received highly favorable performance evaluations from her supervisors, and she achieved an overall rating of "Exceptional" on her year-end performance appraisals in each year from 2003 through 2006. (Anderson Performance Appraisals, Pl's Ex. 8.) Beginning in 2007, however, Anderson's supervisors began expressing concerns about her performance, specifically related to her non-compliance with certain company policies. For example, one of Defendant's policies required that all sales contracts be complete before a Sales Manager submits them for approval to upper management or counts the sales towards her individual sales goals. (Fishman Aff. ¶ 10.) Yet Division Manager Steve Fishman ("Fishman") noticed that in late June 2007—just before the fiscal year deadline for calculating sales-based bonuses—Anderson had marked a sale as "complete" even though the sales contract was missing signatures.[2] (Pl.'s Ex. 18, July 5, 2007 email.) The mistake was small and Anderson eventually

---

[2] Fishman's email to Anderson also noted a second contract that had been marked as "complete" and submitted even though it contained handwritten margin notes indicating that further "adjustments" to the purchase agreement were still required. (Def.'s Ex. 11, July 5, 2007 email.) The parties dispute, however, whether this mistake is attributable to Anderson. Oddly enough, Fishman testified that he thought that the mistake might have been made by a different Sales Manager, (Fishman Dep. at 65), whereas Anderson testified that the mistake was her own, (Anderson Dep. at 303-04). Because I must draw all reasonable inferences in the non-moving party's favor when considering a motion for summary judgment, *Matsushita*, 475 U.S. at 587, I

corrected it, but the error still troubled Fishman because he had placed particular emphasis on proper contract administration in the wake of the division's receipt of a poor score in an internal audit conducted the year before. (Fishman Dep. at 121.)

Additionally, another of Defendant's policies required that all home sales be accompanied by at least $5,000 in "hand money," i.e. deposit. (*See* Fishman Dep. at 53-54.) In June and July 2008, however, Anderson approved a total of six home sales in which the "hand money" did not reach the minimum threshold set by NVR. (Pl.'s Ex. 30, Aug. 19, 2008 email.) This issue was again flagged by Fishman, who sent Anderson an email reminding her of the company policy and asking that she "please . . . not report [deals] until we have the minimum" deposit. (*Id.*) Similarly, NVR had also instituted a policy forbidding sales employees from providing a buyer with closing cost assistance from any lender other than NVR. (Fishman Dep. at 36-38.) But, again, Anderson ignored this policy and provided a buyer with unauthorized closing assistance from an outside lender, an error that was once again documented at the time by Fishman in an email. (Pl.'s Ex. 29, July 13, 2008 email.)

These compliance issues were not Anderson's only difficulties at work during the 2007-08 time period, as Fishman noted that, in his opinion, Anderson was not accurately evaluating her direct reports and was instead giving them inflated performance reviews. (Fishman Dep. at 110-13; Anderson Dep. at 167-68.) Specifically, Fishman and Anderson "disagreed significantly" about the rating Anderson assigned to Pat Quezner on Quezner's year-end performance appraisal. (Fishman Dep. at 112.) Although Fishman had expressed concerns about Quezner's performance to Anderson on at least two prior occasions, (Anderson Dep. at 167), Anderson nevertheless assigned Quezner an overall performance rating of "4/Above

assume for the purposes of this motion that this particular mistake is not attributable to Anderson and therefore does not reflect negatively on her performance record.

Standard" on a scale of one to five, (Anderson Dep. at 168). In April 2008, Fishman made note of this issue in the "Manager Comments" section of Anderson's own year-end performance review: "Annette—I am concerned about your inaccurate appraisal ratings regarding your direct reports. It is very important that we give fair and accurate ratings to our employees and not any gifts." (Anderson Performance Appraisal, Pl.'s Ex. 13, at 8.)

In addition to these compliance and management issues, Anderson's sales numbers also lagged behind her projected sales quota for the year 2007, although certainly this deficit was due in part to the stagnant housing market. Indeed, Fishman recognized as much in his year-end appraisal of Anderson's performance, commenting that Anderson "fought hard for her sales in this most incredibly challenging year. (*Id.* at 3.) But Fishman also emphasized that "[n]evertheless, the results that were achieved need improvement in 2008," and he further observed that he would like to see "the point of sale material step up to the next level" and "a more aggressive approach to the marketing items listed." (*Id.*) Given these concerns, Fishman assigned Anderson a rating of "1/Unsatisfactory" on a scale of one to five in the "Sales" portion of her 2007 performance review. (*Id.*) These sales shortcomings, along with Fishman's concerns about Anderson's adherence to company policy and evaluation of her direct reports, contributed to Fishman's decision to assign Anderson an overall of score of "3/Meets Standard" on her 2007 performance review. (*Id.* at 7.) Significantly, Dave Hilton ("Hilton") and Pete Robertson ("Robertson"), the two employees retained as Sales Managers after the 2008 RIF, both earned an overall rating of "4/Above Standard" on their 2007 year-end performance appraisals. (Hilton Performance Appraisal, Pl.'s Ex. 10, at 9; Robertson Performance Appraisal, Pl.'s Ex. 16, at 7.)

Although NVR had decided to retain Anderson and demote younger employees in two

previous workforce reductions in 2006 and 2007,[3] stagnant home sales forced NVR to initiate yet

another consolidation of the WMD Region in October 2008.  This time, Fishman and Regional

Manager David Schenkel ("Schenkel") were tasked with picking two Sales Managers to retain

from a pool of five current employees: Anderson, then age 50, Hilton, age 32, Robertson, age 37,

Nuela Eby, age 44 ("Eby"), and Doug McIltrot, age 39 ("McIltrot").  (Forced Ranking Form,

Pl.'s Ex. 37.)  To determine which of these employees would be retained, Schenkel and Fishman

utilized a forced ranking process in which all five candidates were evaluated on the basis of four

criteria: (1) overall performance; (2) overall leadership; (3) overall knowledge; and (4) overall

dimension strength, a compilation of character traits including problem analysis, judgment,

adaptability, and human relations.[4]  (Manager's Reduction Selection Guidelines, Pl.'s Ex. 33.)

Through this process, Schenkel and Fishman ranked the five employees in the following order:

(1) Robertson; (2) Hilton; (3) Anderson; (4) Eby; and (5) McIltrot.  (Forced Ranking Form, Pl.'s

---

[3] In 2006, NVR consolidated the WMD Region from six divisions to four and initiated a
RIF that required it to demote a Sales Manager.  (Schenkel Aff. ¶ 4.)  After evaluating the
performance of Anderson, then age 48, and the other Sales Manager, 28-year-old Andy
Hutchinson, Schenkel decided to retain Anderson as a Sales Manager in the division and demote
the much younger Hutchinson.  (*Id.* ¶¶ 6-9; Madigan Aff. ¶¶ 9-10.)  In 2007, NVR undertook
further consolidation of the WMD Region that required it to pick two Sales Managers to retain
from a pool of four employees: Anderson, then age 49, Mike Scarpignato, age 42, Dave Hilton
("Hilton"), age 31, and Leslie Mytrysak, age 31.  (Schenkel Aff. ¶¶ 10-11; Fishman Aff. ¶¶ 3-4.)
After determining Anderson and Hilton to be the two strongest performers, Schenkel and
Fishman chose to retain them as Sales Managers.  Scarpignato and Mytrysak, both significantly
younger than Anderson, were offered severance packages and left the company.  (*Id.*)
[4] The forced ranking process directed decision-makers to "review the personnel folders of
the employees to be compared" with "special attention . . . paid to the most recent performance
appraisals . . . and documented performance deficiencies."  (Instructions for Completing a
Forced Ranking, Pl.'s Ex. 33, at 3.)  As discussed in greater detail below, Schenkel and Fishman
admittedly did not specifically review the actual appraisal forms for the previous year, but
Fishman testified that because the most recent performance appraisals had been completed just
six months prior to the reduction in force, the contents of the forms were still "very fresh" in his
mind and he knew "where [the employees] stood" in relation to each other."  (Fishman Dep. at
89.)

Ex. 37.)  In keeping with the rankings, Defendant decided to retain Robertson and Hilton as

Sales Managers, and on October 31, 2008, Schenkel and Fishman informed Anderson that she

would have the option to accept a demotion to a position as Senior Sales Representative or take a

severance package and leave the company.  (Fishman Dep. 139-40.)  One week later, on

November 6, 2008, Anderson informed Fishman that she would be accepting the severance

package and leaving the employ of Defendant.  (Anderson Dep. at 238-39.)

Anderson filed charges of age and sex discrimination with the EEOC on December 12,

2008 and received a Notice of Right to Sue from the EEOC on July 13, 2009.  (Compl. ¶ 30.)

On August 31, 2009, Anderson filed this suit for age discrimination under the ADEA and for sex

discrimination under Title VII of the Civil Rights Act seeking compensatory damages and such

equitable relief as may be appropriate in the circumstances.  (Compl. ¶¶ 33, 36.)  On March 22,

2010, Anderson voluntarily dismissed her Title VII sex discrimination claims with prejudice,

leaving the ADEA age discrimination claim as the sole remaining claim in the case.  (Stipulation

of Dismissal, Doc. 25, Mar. 22, 2010.)  Defendant moved for summary judgment on this issue,

and I now grant Defendant's motion and enter judgment in its favor.

II.     STANDARD OF REVIEW

A motion for summary judgment should be granted only if there is no genuine dispute as

to a material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A material fact is one that "might affect the outcome of the suit."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute about a material fact exists only "if

the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*

"The party opposing a properly supported motion for summary judgment may not rest upon the

mere allegations or denials of its pleadings, but rather must set forth specific facts showing that

there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

III.     ANALYSIS

A plaintiff may establish a claim for age discrimination, and thereby defeat summary judgment in one of two ways: first, by adducing direct evidence showing that age discrimination motivated the adverse employment action; or second, by proceeding under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In this case, Anderson does not offer any direct evidence of discrimination and proceeds instead under the *McDonnell Douglas* framework.  Under this approach, the plaintiff must first demonstrate a prima facie case of age discrimination.  *Id.* at 802.  If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  If the employer makes such a showing, "the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'"  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  While the evidentiary burdens shift back and forth under *McDonnell Douglas*, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (internal quotations omitted).

A.     Prima Facie Case

To establish a prima facie age discrimination claim in the reduction in force context, a plaintiff suing under the ADEA must show: "(1) the employee was protected by the ADEA; (2)

he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993); *see also Corti v. Storage Tech. Corp.*, 304 F.3d 336, 340 n.6 (4th Cir. 2002). It is undisputed that Anderson satisfies the first two elements of this test. The third and fourth elements, however, present a closer question. Defendant contends that Anderson has not satisfied the third and fourth elements because she has failed to demonstrate that she was performing at a level equal to or above that of Hilton and Robertson, the two retained employees. Specifically, NVR points to its concerns about Anderson's inability or unwillingness to adhere to company policies, her allegedly inflated and inaccurate evaluations of her direct reports, her lower overall performance rating in the 2007 performance appraisal, and her underwhelming sales numbers. (Def.'s Mem. at 21-22.) Anderson admits that she did not always abide by company policies, but she argues that any violations of rules were minor and were done with the full knowledge and approval of Fishman, her supervisor. (*See* Anderson Dep. at 330 ["If [Fishman] accepted these deals, then they weren't so horrible that he didn't feel that [NVR] couldn't take them."].) Similarly, Anderson further acknowledges that Hilton achieved better sales figures than she had for the year 2007, but she contends that the difference between their sales numbers was too small to serve as a basis for selecting her for demotion in the RIF. (Pl.'s Opp'n at 6-7.) Finally, Anderson emphasizes that her 2007 performance rating was an aberration from the very positive performance reviews that she had generally received during her career at NVR. (*Id.* at 5-6, 15.)

Whether Anderson can be said to have performed "at a level substantially equivalent" to that of Hilton and Robertson is questionable given Hilton and Robertson's superior ratings on their 2007 performance appraisals, Hilton's more robust sales numbers, and Anderson's difficulties with adhering to company policies. Needless to say, whether Hilton and Robertson were performing "at a level lower than that at which [Anderson] was performing," as required the fourth element of a prima facie case, is an even more doubtful proposition. Nevertheless, the record shows that Anderson was a "good employee," (Def.'s Reply at 10), and that her sales numbers were not far off from Hilton's,[5] so she arguably has produced evidence demonstrating "substantially equivalent" performance sufficient to make a prima facie showing. Yet this is a question that I need not decide in order to rule on the instant motion, so I will assume without deciding that Anderson has established a prima facie case of age discrimination.

B.     Nondiscriminatory Basis

Assuming Anderson has established a prima facie case of discrimination, then under the *McDonnell Douglas* framework, the burden shifts to NVR to identify a legitimate, nondiscriminatory basis for its adverse employment action. *Holland*, 487 F.3d at 214. There is little question that Defendant has met this burden here. First, there is no dispute that NVR was struggling to remain viable in rapidly declining housing market and that significant workforce reductions were necessary to offset huge losses in revenue. (*See* Madigan Aff. ¶ 5 [noting that NVR's revenue dropped 49 percent between 2005 and 2010 and that the company reduced its

---

[5] The 2007 year-end performance reviews provided statistics for both Hilton and Anderson in the following categories: percent of sales plan completed (Hilton – 57%, Anderson – 50%); actual net sales (Hilton – 173, Anderson – 133); direct profit percentage (Hilton – 26%, Anderson – 15%), and cancellation rate (Hilton – 39%, Anderson – 43%). (*Compare* Hilton Appraisal, Pl.'s Ex. 10, at 3, *with* Anderson Appraisal, Pl.'s Ex. 13, at 3.) Robertson was employed as a General Manager of Sales prior to the October 2008 RIF and thus was not assigned a specific sales plan like Anderson and Hilton. (Def.'s Mem. at 14 n.6).

workforce by 50 percent in that same time period].)  Additionally, NVR's RIF was conducted

according to a forced ranking system in which the lowest-ranked employees were demoted, a

method that has been widely recognized as a valid basis for an adverse employment action.  *See,*

*e.g.*, *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234 (4th Cir. 1991) ("Deciding to

lay off someone based on a company-wide performance rating system . . . and choosing to lay off

all those who were among the lowest rated, must count as an articulation of a legitimate, non-

discriminatory reason.").  Accordingly, NVR has undoubtedly satisfied its burden of articulating

a valid, nondiscriminatory basis for its demotion of Anderson.

       C.     <u>Pretext</u>

      Given this asserted nondiscriminatory basis for NVR's action, the burden shifts back to

Anderson to demonstrate that NVR's proffered reason for demoting her was actually a pretext

for impermissible discrimination.  *Reeves*, 530 U.S. at 143.  As the Fourth Circuit has explained,

a plaintiff "must do more than simply show the articulated reason is false; [s]he must also show

that the employer discriminated against [her] on the basis of age."  *Laber v. Harvey*, 438 F.3d

404, 430-31 (4th Cir. 2006).  Although "[i]n some cases . . . proof that the employer's reason is

false is sufficient to show age discrimination when combined with the plaintiff's prima facie

case," *id.* at 431, such a showing is not always sufficient to demonstrate pretext.  *Reeves*, 530

U.S. at 138 ("Certainly there will be instances where, although the plaintiff has established a

prima facie case and set forth sufficient evidence to reject the defendant's explanation, no

rational factfinder could conclude that the action was discriminatory.").  Here, Anderson has

failed to present sufficient evidence from which a reasonable trier of fact could conclude that

NVR's proffered reason was false.  Moreover, even if she was able to prove that NVR's stated

reason was not credible, she has not met her burden of showing that the true reason for

Anderson's demotion was age discrimination.

      1.      <u>Anderson Has Not Shown that NVR's Stated Reason for Her Demotion Was False.</u>

Anderson's opposition to NVR's motion focuses almost exclusively on challenging the

merits of Schenkel and Fishman's concerns about her performance. Anderson vigorously

disputes the overall rating of "3/Meets Standard" she received on her 2007 year-end performance

appraisal—especially when compared the score of "4/Above Standards" received by Robertson

and Hilton—and she pointedly questions Fishman's criticisms her performance. In short,

Anderson contends that she was a better employee than Robertson and Hilton, and that NVR's

decision to demote her while retaining these younger two employees necessarily demonstrates an

impermissible age-based animus. (*See* Pl.'s Opp'n at 45-46.) Thus, Anderson argues that

NVR's asserted reason for demoting her—namely, because she ranked third in the forced

ranking process—was "clearly pretextual." (*Id.* [asserting that "plaintiff has . . . shown herself to

have been preeminent as compared to Robertson and Hilton in regard to defendant's forced-

ranking criteria, and thereby revealed defendant's claims of a contrary determination to be a

pretext"].)

This argument is unpersuasive. First, as a simple factual matter, there is ample evidence

in the record to support NVR's concerns about Anderson's performance and justify their

retention of Hilton and Robertson over her. The several instances in which Anderson failed to

abide by NVR's policy in her handling of initial deposits and reporting of completed sales serve

as illustrative examples of her performance issues. (*See* Pl.'s Ex. 18, July 5, 2007 email; Pl.'s

Ex. 30, Aug. 19, 2008 email; Pl.'s Ex. 29, July 13, 2008 email.) Although Anderson admits to

making these mistakes, (Anderson Dep. at 302-04, 316-19, 328-29), she argues that they should

not have counted against her in her performance review because they were minor errors that

Fishman implicitly endorsed. (*See, e.g.*, Anderson Dep. at 329 [admitting that she reported six

sales that lacked the minimum deposit required by NVR policy, but pointing out that Fishman

accepted the sales anyway].) Yet while Fishman may have approved these transactions because

it was "not good business to turn back the sale," (Fishman Dep. at 44), he also clearly expressed

his displeasure with Anderson's deviations from company policy: "We need to get the minimum

[deposit] to report future sales. Please . . . do not report it until we have the minimum."[6] (Def.'s

Ex. 30, Aug. 19, 2008 email.) This type of failure to adhere to NVR's policies, along with

Fishman and Schenkel's well-documented concerns about the accuracy of Anderson's

evaluations of her direct reports, (Fishman Dep. at 110-13; Anderson Dep. at 167-68; Anderson

Performance Appraisal, Pl.'s Ex. 13, at 8), and her mediocre sales in the preceding calendar

year,[7] (Anderson Performance Appraisal, Pl.'s Ex. 13, at 3), provide more than enough support

for the lukewarm assessment of Anderson's performance.

Anderson further disputes the merits of NVR's employee evaluations by pointing out that

she had met 100 percent of her projected sales plan for the 2008 year, had received positive

---

[6] Additionally, Anderson seizes upon Fishman's remark that he also saved emails critical of Hilton's performance, (Fishman Dep. at 16-17), and argues that Hilton made mistakes similar to her own but was not criticized as harshly. (Pl.'s Opp'n at 24.) Fishman clarified, however, that "there was not any specific area [of Hilton's performance] I was concerned [with]" and that he had "more concerns with [Anderson]." (Fishman Dep. at 183.)

[7] Anderson does not dispute that she fell well short of her sales goals or that Hilton's sales outpaced her own, (*compare* Hilton Appraisal, Pl.'s Ex. 10, at 3, *with* Anderson Appraisal, Pl.'s Ex. 13, at 3), but she claims that the gap between their sales figures was not large enough to justify the difference in ratings on their 2007 year-end performance reviews (Anderson received a score of "1/Unsatisfactory" in the "Sales" category of her performance review; Hilton's score was "3/Meets Standard" in the same category). (Pl.'s Opp'n at 6-7.) This argument amounts to a dispute about the merits of Defendant's evaluations of its own employees, but as the Fourth Circuit has made clear, courts "do not sit to appraise [an employer's] appraisal." *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Ultimately, the argument proves "only the unremarkable fact that [Anderson] and [Fishman] disagreed about the quality of her work." *Id.*

feedback on her community audit presentations, and had more sales experience than either Hilton or Robertson. (Pl.'s Opp'n at 18-20.) While it is true that Anderson was doing a fine job as measured by some performance metrics, the record indicates that Hilton and Robertson simply were even stronger candidates. For example, Anderson had met approximately 100 percent of her projected sales plan during the 2008 calendar year, but Hilton outperformed her by achieving 117 percent of his own plan. (Fishman Dep. at 134-35.) Similarly, although Fishman considered Anderson's community audit presentation to be good, he rated Hilton's audit presentations as more impressive because Hilton "showed stronger leadership" and "took . . . ownership of the audit through the process from A to Z," whereas Anderson tended to "defer to [her direct reports] in those types of situations." (*Id.* at 207-08). And finally, although Anderson had more years of sales experience than the other candidates, Fishman and Schenkel made clear that given the upheaval in the housing market, they were more interested in retaining candidates with broad-based experience in both the sales and production sides of their business. (Schenkel Aff. ¶ 19; Fishman Aff. ¶ 13.) Robertson and Hilton both possessed this diversity of experience, but Anderson had always worked only in sales and marketing. (Anderson Dep. at 43.)

Even more fundamentally, however, Anderson's challenge to the merits of NVR's employee evaluations misses the point of the pretext inquiry. To demonstrate pretext, a plaintiff must show that the defendant's proffered explanation was not the real reason for an adverse employment action. Thus, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins*, 203 F.3d at 280; *see also Hart v. Bon Secours Balt. Health Sys.*, JFM-08-2516, 2010 U.S. Dist. LEXIS 84035, at *15 (D. Md. Aug. 17, 2010) ("The pretext inquiry must focus on the perception of the decision maker and whether its stated reason is credible."). Accordingly, even if Anderson were correct that Fishman's criticisms of her

performance were unjustified and that she was actually a better employee than Robertson or Hilton, this does little to advance her case because "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). More than showing that she was a stronger candidate for retention than Hilton or Robertson, Anderson must produce evidence demonstrating that NVR did not believe (or could not have reasonably believed) that Hilton and Robertson were the stronger candidates. *See Hart*, U.S. Dist. LEXIS 84035, at *15-16; *see also Licausi v. Symantec Corp.*, 378 F. App'x 964, 966 (11th Cir. 2010) ("A plaintiff cannot prove pretext merely by arguing or showing that he was more qualified than the person who received the position. Rather, the plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person . . . could have chosen the candidate selected over the plaintiff."). As Anderson has failed to adduce any evidence indicating that Fishman and Schenkel did not genuinely consider Robertson and Hilton to be stronger candidates, her disagreement with the merits of NVR's assessment of its employees does not satisfy her burden of demonstrating pretext by a preponderance of the evidence.

Anderson also briefly advances several other arguments in an attempt to prove pretext, but none are persuasive. First, she argues that NVR disregarded its own forced ranking procedures and instead "engaged in some nebulous, unmemorialized discussion of the candidates' respective performances generally," which resulted in rankings that were "utterly perfunctory." (Pl.'s Opp'n at 28-30, 47-48.) Although NVR's official forced ranking policy direct supervisors to "review the personnel folders of the employees to be compared" with "special attention . . . paid to the most recent performance appraisals . . . and documented

performance deficiencies" (Instructions for Completing a Forced Ranking, Pl.'s Ex. 33, at 3),

Anderson emphasizes that Schenkel and Fishman did not review the previous year's performance

appraisals and that Fishman had never even seen NVR's official forced ranking procedures at the

time of the RIF, (Pl.'s Opp'n at 29, 48; Fishman Dep. at 76-77). Yet Fishman testified that the

contents of the performance appraisals were still "very fresh" in his mind because he had just

completed them six months earlier. (Fishman Dep. at 89.) Moreover, Fishman's undisputed

testimony establishes that he and Schnekel relied on the results of the 2007 year-end

performance appraisals even if they did not re-read the actual forms.[8] At most, then, Anderson

has identified nothing more than a procedural irregularity in the ranking process, and this court

has previously held that "mere procedural irregularities are insufficient to show discriminatory

intent." *Nichols v. Caroline County Bd. of Educ.*, JFM-02-3523, 2004 U.S. Dist. LEXIS 2851, at

*14 n.5 (D. Md. Feb. 23, 2004) (citing *Vaughan v. MetraHealth Companies, Inc.*, 145 F.3d 197,

203 (4th Cir. 1998)). Additionally, a recent Sixth Circuit case addressing a nearly identical issue

held that a discriminatory motive cannot be attributed to an employer who follows the spirit, but

not the letter, of a prescribed layoff procedure:

> [The supervisor's] ignorance of the handbook provision . . . does not give rise to
> an inference that his decision had anything to do with Plaintiff's age.
> Furthermore, [the supervisor's] undisputed testimony established that he
> considered the employees' qualifications, and their ability to work together
> constructively as a team. . . . Thus, as a practical matter, [the supervisor] followed
> the [defendant's] layoff criteria.

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010). For similar

reasons, the minor procedural error identified by Anderson here in no way suggests that her

demotion was attributable to age-based animus.

---

[8] Indeed, the very fact that Anderson's opposition brief focuses largely on disputing the
contents of her 2007 performance appraisal indicates that even she realizes that NVR relied on
the contents of that document in conducting the RIF.

Anderson also asserts that pretext can be proven by looking at "the raw results of the RIF themselves, which could not have been more flagrant from an age standpoint with every older, age-protected member of the forced-ranking pool . . . denied a Sales Manager position, and every younger, non-age-protected member granted one." (Pl.'s Opp'n at 49.) The clear suggestion is that these results speak to the statistical probability of age discrimination in the outcome of the RIF. (*Id.* at 32.) Even accepting Anderson's age breakdown to be factually true,[9] these results do little to demonstrate pretext within the context of this case because, by Anderson's count, only four employees were "true candidates" for the position she sought (and only seven employees were candidates for Sales Manager positions across the region as a whole). (*Id.* at 31.) Such a tiny pool of candidates results in a sample size that is simply too small to have any statistical significance. *See, e.g.*, *Vaughan v. MetraHealth Cos.*, 145 F.3d 197, 203 (4th Cir. 1998); ("[Plaintiff's] 'statistics' are particularly unhelpful, as they are drawn from a sample of seven employees, which is too small for reliable analysis."); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) (holding that it is "improper to rely on the results of statistical

---

[9] The record indicates that Doug McIltrot, age 39, was among the group of employees evaluated and rejected by Fishman and Schenkel. (RIF Forced Ranking Form, Def.'s Ex. 37.) Plaintiff contends that McIltrot was not a "true candidate" for the job, however, because he had previously indicated that he would not accept a demotion to Sales Manager from his then-position as General Manager of Sales. (Pl.'s Opp'n at 31.) Thus, although Fishman and Schenkel included McIltrot in the forced ranking pool (and ranked him last among the candidates), Anderson argues that the presence of the younger McIltrot among the pool of demoted employees should be ignored entirely. (*Id.* at 31-32.)

Anderson also goes one step further and claims that McIltrot's inclusion in the forced ranking pool is actually affirmative evidence of a cover-up arranged by NVR to conceal its discriminatory practices. She asserts that it is "painfully obvious" that NVR included McIltrot in the forced rankings in an attempt to avoid the "inescapable inference of age bias raised by the results of the RIF." (Pl.'s Opp'n at 31.) She further asserts that this "thoroughly clumsy and transparent stratagem" indicates "a consciousness of guilt on defendant's part." (*Id.* at 31, 49.) Yet despite her contention that this alleged cover-up was "painfully obvious" and "thoroughly clumsy," Anderson fails to provide evidence of any kind indicating that a cover-up occurred. Accordingly, I find that the mere act of including McIltrot in the forced ranking pool does not give rise to any inference of age-based discrimination.

analyses" when only four employees are involved); *Simpson v. Midland-Ross Corp.*, 823 F.2d

937, 943 (6th Cir. 1987) (holding that where seventeen employees departed a company, "reliance

upon such a small sample [is] suspect"). As a result, Anderson's reliance on the raw results of

the RIF also fails to demonstrate pretext by a preponderance of the evidence.[10]

> 2.   Even If Anderson Could Show that NVR's Stated Reason for Her
>      Demotion Was Pretextual, She Has Not Demonstrated that NVR's True
>      Motive Was Age-Based Animus.

In the end, Anderson "has proffered no direct or circumstantial evidence of

discriminatory intent" on the part of NVR, and she is left with only her "own subjective intuition

that [NVR] acted with [age-based] animus." *See Nichols*, 2004 U.S. Dist. LEXIS 2851, at *31-

32. Yet even if Anderson could demonstrate that NVR's asserted reason for her demotion was

false, "she must also show that the employer discriminated against [her] on the basis of age."

*Laber*, 438 F.3d at 430-31; *see also Reeves*, 30 U.S. at 146-47 ("[P]roof that the employer's

proffered reason is unpersuasive . . . does not necessarily establish that [a plaintiff's] proffered

reason . . . is correct."). Again, Anderson fails to meet this burden. She admits that in her

twenty years of employment at NVR, she never once complained of age discrimination, she

never heard a single remark reflecting an age-based bias, and she never encountered a single

instance of unfavorable treatment based on age aside from her allegedly discriminatory

demotion. (Anderson Dep. at 193, 255-56.) Indeed, Anderson herself originally ascribed a

---

[10] Anderson correctly points out that in determining whether she has established pretext, I must also consider the strength of her prima facie case, *Reeves*, 530 U.S. at 148, yet this does not alter my conclusion. I have assumed without deciding that Anderson has made a prima facie showing of age discrimination, but as discussed above, her case is "distinctly weak" on the question of whether she was performing at a level equivalent to or above that of Hilton and Robertson. *Tomaschefsky v. Petroleum Fuel & Terminal Co.*, No. JFM-99-1837, 2010 U.S. Dist. LEXIS 106863, at *13 n.3 (Aug. 23, 2010). Indeed, the record contains considerable evidence that Anderson's work performance was not as strong as that of Hilton and Robertson. Therefore, "considering the weakness of [Anderson's] prima facie case," *id.*, I reiterate my holding that Anderson has failed to meet her burden of demonstrating pretext.

nondiscriminatory motive to NVR, as she initially stated that she "was sure" that her demotion was due to "how close and well liked Mr. Schenkel and Mr. Hilton's relationship is [*sic*]." (*Id.* at 109.) Given this failure to identify any objective evidence of age-based animus, Anderson's allegations of discrimination are shown to be groundless. Thus, based on the undisputed facts before me, I hold that no rational trier of fact could conclude that NVR's decision to demote Anderson was attributable to an impermissible age-based bias.

For the foregoing reasons, NVR's motion for summary judgment will be granted. A separate order is being entered herewith.

Date: December 30, 2010                    _____/s/_____

                                           J. Frederick Motz
                                           United States District Judge